# UNITED STATES COURT OF APPEALS

# FOR THE THIRD CIRCUIT

No. 25-1459

CHERYL HILEMAN,
Appellant

v.

WEST PENN ALLEGHENY HEALTH SYSTEM INC.,
d/b/a Forbes Hospital

_____

On Appeal from the U.S. District Court, W.D. Pa.
Judge Marilyn J. Horan, No. 2:23-cv-01119

Before: BIBAS, CHUNG, and MASCOTT, *Circuit Judges*
Argued: June 25, 2026; Filed: July 20, 2026

_____

OPINION OF THE COURT

BIBAS, *Circuit Judge*. The disability-discrimination and medical-leave laws are shields against discrimination, not get-out-of-discipline-free cards. An employee must notify her employer of her disability and clearly communicate her desire for an accommodation or intent to take leave before her employer must accommodate her. Cheryl Hileman did not. She cannot now recast her firing for sleeping on the job as discrimination, retaliation, or failure to accommodate.

## I. SLEEPING ON THE JOB

Hileman worked the midnight shift at Forbes Hospital, a part of West Penn Allegheny Health System, doing CAT scans. About a year into her job, she was reprimanded for calling out of work too often. The reprimand form also advised her how to ask for a disability accommodation or medical leave. She did not.

Five months later, in July 2022, a coworker reported Hileman for sleeping on duty, texting during work, and failing to stock rooms. Though she "d[id] not know for a fact . . . if [Hileman] [wa]s truly sleeping or not," she raised "major concerns" that Hileman was "nodding off multiple times in one shift" and believed "she [wa]s truly sleeping." App. 219. Hospital policy forbade sleeping on duty or positioning oneself to sleep, warning employees that it could cost them their jobs.

So Hileman's manager started an investigation. Less than two weeks after the incident, he met with her to discuss the accusation and get her side of the story. She denied sleeping but admitted that she "might have shut [her] eyes" to alleviate dry eye caused by a change in her diabetes medication that was also causing fatigue. App. 267. That was the first time that she disclosed her diabetes, which she had been diagnosed with before starting her job. Though she later emailed him a statement that she was "praying" for improvement and adjusting her medication, she did not ask for a disability accommodation or medical leave. App. 174. Soon after, West Penn fired her for misconduct.

Hileman then sued West Penn, claiming disability discrimination, failure to accommodate, retaliation, and wrongful

2

termination under the Americans with Disabilities Act (ADA) and Pennsylvania Human Relations Act (PHRA), as well as interference with medical leave under the Family and Medical Leave Act. 42 U.S.C. § 12112; 43 Pa. Cons. Stat. § 951. The District Court granted West Penn summary judgment because she was fired for misconduct and never asked for reasonable accommodation before the investigation, if at all, nor leave. We review de novo. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019).

## II. SANCTIONS FOR THE MOTION TO SUPPLEMENT

To start, Hileman asks us to expand the record by considering materials that she had but did not include at summary judgment. We cannot. Ordinarily, we confine our review to the record before the District Court. Fed. R. App. P. 10(a). And though a party can supplement the record upon showing "exceptional circumstances," there are no such circumstances to require supplementation here. *Burton v. Teleflex Inc.*, 707 F.3d 417, 435–36 (3d Cir. 2013); *see* Fed. R. App. P. 10(e)(2).

If that were not enough, Hileman's motion to supplement includes misquotations. We cannot tell if they were hallucinations by artificial intelligence, since they cite real cases about the same subject. Either way, misquotations are serious, and we expect counsel to guard against them by checking citations. Instead, Hileman's lawyer, Joshua P. Ward, "submitted a [motion] that relied on cases given to him and summarized by a non-attorney." *McCarthy v. United States Drug Enf't Admin.*, 171 F.4th 245, 247 (3d Cir. 2026).

Plus, Ward has engaged in misconduct before a court in this Circuit before. *See Sofaly v. Portfolio Recovery Assocs., LLC*,

3

155 F.4th 289 (3d Cir. 2025) (affirming sanctions against Ward related to ginned-up Fair Credit Reporting Act lawsuits based on false and misleading documents). And he still awaits the outcome of other sanctions hearings. *See* Order to Show Cause, *Flament v. Allegheny Health Network*, No. 2:24-cv-977 (W.D. Pa. Mar. 24, 2026), ECF No. 147. One incident may be a mistake; two or three is a pattern. "A panel of this court 'may impose any sanction other than suspension or disbarment,'" including "monetary sanctions," after giving the lawyer in question an opportunity to be heard. *McCarthy*, 171 F.4th at 245 (quoting Circuit Disciplinary R. 4.1, 3.1). Ward, a member of the bar of this Court, falls within the ambit of our Disciplinary Rules. In light of Ward's past misconduct, we ordered him to show cause why he should not be sanctioned for submitting a motion containing misquotations. But he simply explained that he did not check after a law clerk prepared the document. Finding his response insufficient to foreclose sanctions, we order him to reimburse West Penn for the attorney's fees that it paid to respond to his antics: $14,636.50. Ward may not recoup those costs from Hileman, but must pay them himself.

### III.   EMPLOYEES MUST ASK FOR ACCOMMODATIONS

With the motion to supplement and sanctions out of the way, we now proceed to the merits and conclude that Hileman's claims fail. To claim a failure to provide a disability accommodation under the ADA or PHRA, an employee must first show that her employer knew that she needed reasonable accommodation yet failed to provide it. *See Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 69 (3d Cir. 1996); 42 U.S.C. §12112(a) ("No covered entity shall discriminate against a

4

qualified individual on the basis of disability ….”); §12112(b)(5)(A) (defining as forbidden discrimination the failure to reasonably accommodate “*known* physical or mental limitations of qualified” employees (emphasis added)). Likewise, before taking a “foreseeable” medical leave, an employee must ask for it and give her employer at least thirty days’ notice (or “such notice as is practicable”). 29 U.S.C. §2612(e)(1); 29 C.F.R. §825.302(a), (c). But Hileman never asked for an accommodation or leave or gave reasonable notice.

Indeed, the first time she mentioned her diabetes and medication-related problems was when her supervisor confronted her for sleeping on the job. Even then, she never suggested an accommodation—she simply asked if there was “anything [she could] do” to make things right and told her manager that she was “praying” and adjusting her medication, but maintained that she had never fallen asleep on the job. App. 271 (first quotation), 214 (second one). So there was nothing for West Penn to accommodate.

Nor was West Penn required to hunt for a possible accommodation request that was never made. *See, e.g.*, *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). The law draws a sensible line: When an employee’s need for accommodation is obvious from visible or known facts, an employer may need to construe even a vague remark generously and follow up. *See Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) (“The law does not require any formal mechanism or magic words, to notify an employer …. ; however, either by direct communication or other appropriate means, the employee must make clear that … she wants

5

assistance for … her disability" (cleaned up)). In one case, for example, the employer already knew that the employee had a serious mental-health condition, had just suffered a breakdown at school, and was hospitalized as a result. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313–14 (3d Cir. 1999). In that setting, a note from the employee's son asking for an accommodation was adequate to serve as a request. *Id.* The need was evident on the face of the facts. The other cases on which Hileman relied similarly involve situations where the need for accommodation was readily apparent from the known disability. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 507 (3d Cir. 2010); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1286–87 (7th Cir. 1996).

But Hileman waited until the last possible moment, on the brink of being fired, to raise any work-related concerns. That timing is weighty. And it has swayed our sister circuits in assessing whether an employer had fair notice of a disability-related need. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 571 (6th Cir. 2023); *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012). More important still, nothing in the record would have alerted West Penn that Hileman was struggling with a medical condition affecting her ability to work. Dry eye and fatigue are not uncommon, whether stemming from a change in medication or not. There was no obvious impairment, no prior disclosure, and no circumstances that would put the employer on notice that ordinary workplace issues masked a disability.

Employers' duty to accommodate is real, but it is not a license to speculate. They must respond to what they know—not

what they might imagine. "Employers cannot assume employees are disabled and need accommodations." *See Taylor v. Phoenixville*, 184 F.3d at 313. And they certainly need not go digging for disabilities without a signal that one exists.

Even if Hileman's statement could somehow qualify as an accommodation request, the ADA did not require West Penn to excuse her misconduct. Except in narrow circumstances, employers may enforce neutral workplace rules even when misconduct stems from a disability. *See Conneen*, 334 F.3d at 331–33 (despite repeated warnings about tardiness and the threat of firing, employee failed to ask for a modified schedule until after she was fired). Sleeping on duty violates a neutral policy. And Hileman offers no evidence that West Penn's stated reasons for terminating her were pretextual or aimed at diabetics. She points to no non-diabetic employees who committed comparable violations yet kept their jobs. *See Salley v. Cir. City Stores, Inc.*, 160 F.3d 977, 981 (3d Cir. 1998). All she claims is that one other technologist slept on duty. But that technologist was not investigated or reported to the manager or to Human Resources, who ultimately decided to fire Hileman.

So even if Hileman had made out a prima facie case of discrimination, West Penn offered a legitimate, non-discriminatory reason for firing her: misconduct. She offers no evidence to suggest that she was instead fired for her medical condition. This dooms Hileman's retaliation and wrongful termination claims, too. When an employee is about to be fired for misconduct, she cannot save her job by belatedly telling her employer about a disability or medical need. *Hrdlicka*, 63 F.4th at 571; *Schaffhauser*, 794 F.3d at 906; *Jones*, 696 F.3d at 90.

* * * * *

Hileman never told West Penn of her diabetes until she was confronted about sleeping on the job; even then, she never asked for a reasonable accommodation or medical leave. So we will AFFIRM.

*Counsel for Appellant*

Joshua Ward          [Argued]
JP WARD & ASSOCIATES

*Counsel for Appellee*

Corinne Mishkin
Mariah H. McGrogan
Ted A. Hages          [Argued]
REED SMITH